**[J-82-2021] [MO: Baer, C.J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

PENNSYLVANIA ENVIRONMENTAL
DEFENSE FOUNDATION,

             Appellant

             v.

COMMONWEALTH OF PENNSYLVANIA,
AND TOM WOLF, IN HIS OFFICIAL
CAPACITY AS GOVERNOR OF
PENNSYLVANIA,

             Appellees

: No. 65 MAP 2020
:
:
: Appeal from the Order of the
: Commonwealth Court at No. 358
: MD 2018 dated October 22, 2020
:
: ARGUED: December 8, 2021
:
:
:
:
:
:
:
:
:

**CONCURRING OPINION**

**JUSTICE DONOHUE**                           **DECIDED: August 5, 2022**

     I join the Majority and write separately to address the concerns voiced by my learned colleagues regarding the potential use of trust assets for non-trust activities. While I agree that in operation the statute may prove to be unconstitutional, I do not believe it is facially so. I conclude that the Commonwealth Court's order requiring the Commonwealth to account for asset expenditures, as specifically requested by the PEDF, will bring any as-applied constitutional defects to light. Indeed, I would not join the Majority Opinion if it "[d]eem[ed] the entirety of DCNR's budget to be a reasonable cost of trust administration[.]" Concurring and Dissenting Op. at 8 (Wecht, J.). The Commonwealth Court rejected that conclusion, and we do so again today.

I briefly elaborate on two parts of the Commonwealth Court's opinion that I deem pertinent to Justices Dougherty and Wecht's conclusion that Sections 104(P) and 1601 of the General Appropriations Acts of 2017 and 2018 are facially unconstitutional. The PEDF asserted that these provisions are

> facially unconstitutional because they authorize the appropriation of Lease Fund money for general government operations. According to the Foundation, the Commonwealth cannot use any of the proceeds from oil and gas deposited in the Lease Fund to pay for the DCNR's general government operations, which include salaries and travel expenses, contract fees, vehicle and equipment purchases and maintenance, office rentals, and other similar expenses.

*PEDF v. Commonwealth*, 2020 WL 6193643 at *5 (Pa. Commw. 2020) (*"PEDF IV"*).

The Commonwealth responded that "[c]onservation and maintenance activities are not accomplished in a vacuum: they require people and equipment." *Id*. The Commonwealth sought its own declaration "that its current usage of the Lease Fund is wholly consistent with its Section 27 trustee responsibilities." *Id*.

The Commonwealth Court denied both declarations. With respect to the PEDF's challenges, the Majority Opinion cogently explains the Commonwealth Court's reasons and why that result is still correct following *PEDF v. Commonwealth*, 255 A.3d 289 (Pa. 2021) (*"PEDF V"*). As to the Commonwealth's requested declaration, the Commonwealth Court stated:

> In sum, because the Lease Fund contains both trust principal and other deposits, we cannot declare that the appropriations contained in Sections 104(P) and 1601 of the General Appropriation Acts of 2017 and 2018 for the DCNR's government operations are facially unconstitutional. By the same token, we are also unprepared to grant the Commonwealth's sweeping request that its current usage is wholly consistent with its Section 27 trustee responsibilities. Such a declaration requires an as-applied analysis, which we

are not prepared to address in this matter. Therefore, we deny both the Foundation's and the Commonwealth's cross-Applications in this regard.

*PEDF IV*, 2020 WL 6193643 at *8.

I agree with this analysis. The Commonwealth sought a declaration that everything the DCNR does "is wholly consistent" with its fiduciary duties, but the court could not make that determination in the context of a facial challenge. The Commonwealth Court returned to this same point when ruling on the PEDF's request for "a declaration that the Commonwealth must maintain a detailed accounting of monies in the Lease Fund and how they are used." *Id.* at *16. The Commonwealth Court granted that request for the same reason it denied the Commonwealth's requested declaration.

> Although the Commonwealth tracks the source of the monies as they are deposited into the Lease Fund, once in the Lease Fund, money is no longer earmarked or maintained in separate accounts, but is instead "commingled." Petitioner's Brief, Exhibit A, Commonwealth's Answer and Objections to First Set of Interrogatories, ¶¶3a, 3b, 3c. According to the Commonwealth, "it is not possible to identify the originating source of the total monies in the Lease Fund on a particular day." *Id.* Further compounding the problem are the transfers of money from the Lease Fund to the General Fund and beyond. As the money shuffles from one fund to the next, money loses any trace of its originating source.
>
> While money classified as trust principal must be spent on trust purposes, money classified as income need not comply with the same spending restrictions. *PEDF III*, 214 A.3d at 774. By commingling monies in the Lease Fund without classification and by not maintaining adequate records, the Commonwealth is neglecting its fiduciary duties. *See* 20 Pa. C.S. § 7780. It is impossible for this Court to determine whether the money appropriated and transferred from the Lease Fund is trust principal, and whether trust principal is being used in a constitutional manner. Thus, an accounting is necessary to ensure that the assets of the trust are being used only for purposes authorized by the trust or necessary for the preservation of the trust in accordance with Section

> 27. *See PEDF II*, 161 A.3d at 939; *PEDF III*, 214 A.3d at 774.
> Therefore, we grant the Foundation's Application for
> Summary Relief in this regard and declare that the
> Commonwealth, as trustee of Pennsylvania's public natural
> resources, is required to keep detailed accounts of the trust
> monies derived from the oil and gas leases and track how they
> are spent as part of its administration of the trust.

*Id.* at *17.

The Commonwealth did not file a cross-appeal from this holding. Thus, I disagree with Justice Wecht's claim that the Majority Opinion holds that the DCNR's entire budget is a reasonable cost of administering the trust. The Commonwealth unsuccessfully sought that type of declaration from the Commonwealth Court, and we, like that court, say only that the provisions are not facially unconstitutional. The Commonwealth must comply with the Commonwealth Court's order to keep detailed accounts, which permits the PEDF to raise as-applied challenges.

Justice Wecht argues that there is no need to wait for an as-applied challenge and says that the Majority misapplies the standard of review for facial challenges. Justice Wecht opines that Sections 104(P) and 1601 of the General Appropriations Acts of 2017 and 2018 share the same flaws as the provisions struck in *PEDF v. Commonwealth*, 161 A.3d 911 (Pa. 2017) ("*PEDF II*"), as both cases involved "transferr[ing] trust assets from the Lease Fund to pay for DCNR's general operations." Concurring and Dissenting Op. at 6-7 (Wecht, J.). *PEDF II* and this case differ in one critical respect: the fund at issue in *PEDF II* was funded entirely with trust assets, while the current fund may not be. The Oil and Gas Lease Fund examined in *PEDF II* stated:

> All rents and royalties from oil and gas leases of any land
> owned by the Commonwealth, except rents and royalties
> received from game and fish lands, shall be placed in a
> special fund to be known as the "Oil and Gas Lease Fund"

which fund shall be exclusively used for conservation, recreation, dams, or flood control or to match any Federal grants which may be made for any of the aforementioned purposes.

*PEDF II*, 161 A.3d at 920 n.1.

Thus, every dollar put into that fund was from the sale of trust assets, and following *PEDF V* each dollar must go to a trust purpose. The General Assembly, however, has since reconstituted that fund. Section 1601.2-E states that the former Oil and Gas Lease Fund exists as a special fund in the State Treasury and is funded from three sources:

**(b) Sources.--**The following shall be deposited into the fund:

(1) Rents and royalties from oil and gas leases of land owned by the Commonwealth, except rents and royalties received from game and fish lands.

(2) Amounts as provided under section 5 of the act of October 8, 2012 (P.L. 1194, No. 147), known as the Indigenous Mineral Resources Development Act.

(3) Any other money appropriated or transferred to the fund.

72 P.S. § 1601.2-E (footnote omitted).

The first source undeniably represents trust assets. At least facially, the second source does as well.[1] The third source does not so long as the "other money" transferred

---

[1] The Indigenous Mineral Resources Development Act provides that "[s]ixty percent of payments or royalties received by the department shall be deposited in the Oil and Gas Lease Fund." 71 P.S. § 1357.5. Those monies are generated from contracts or leases for mineral extraction on certain State-owned land. 71 P.S. § 1357.3(a).

to the fund is not from the sale of trust assets. As stated in *Clifton v. Allegheny County*, 969 A.2d 1197 (Pa. 2009), the following principles apply to a facial challenge.

> Even under the "plainly legitimate sweep" standard, a statute is only facially invalid when its invalid applications are so real and substantial that they outweigh the statute's "plainly legitimate sweep." Stated differently, a statute is facially invalid when its constitutional deficiency is so evident that proof of actual unconstitutional applications is unnecessary. For this reason (as well as others), facial challenges are generally disfavored. *See Wash. State Grange,* 552 U.S. at –––––, 128 S.Ct. at 1191 ("Facial challenges are disfavored for several reasons. Claims of facial invalidity often rest on speculation. As a consequence, they raise the risk of 'premature interpretation of statutes on the basis of factually barebones records.' ") (quoting *Sabri v. United States,* 541 U.S. 600, 609, 124 S.Ct. 1941, 158 L.Ed.2d 891 (2004)).

*Id.* at 1223 n.37.

In *PEDF II*, the statutes were facially unconstitutional because they "plainly ignore[d] the Commonwealth's constitutionally imposed fiduciary duty to manage the corpus of the environmental public trust for the benefit of the people to accomplish its purpose—conserving and maintaining the corpus by, inter alia, preventing and remedying the degradation, diminution and depletion of our public natural resources." *PEDF II*, 161 A.3d at 938. As the Commonwealth Court in this case pointed out, the *PEDF II* provisions authorized the General Assembly to take trust assets and appropriate them to the General Fund, where they would be clearly spent on non-trust purposes. In terms of a plainly legitimate sweep, the invalid applications of the *PEDF II* provisions were so evident that proof of actual unconstitutional application was unnecessary.

That type of deficiency is not present here for two reasons. First, the Oil and Gas Lease Fund may contain non-trust assets. Thus, on its face the statute is constitutional

if the appropriation included non-trust asset monies which were sufficient to cover all non-trust activities. Second, the appropriation of monies from the Oil and Gas Lease Fund to the DCNR for, inter alia, "the payment of salaries, wages or other compensation and travel expenses of the duly appointed officers and employees of the Commonwealth, for the payment of fees for contractual services rendered, for the purchase or rental of goods and services and for payment of any other expenses, as provided by law or by this act," Maj. Op. at 12 n.13 (quoting provisions), may include costs legitimately allocable to trust administration. All members of the Court agree that at least some of these activities would qualify as trust activity. Justice Dougherty observes that the DCNR's "mission goals of economic use of state forests, recreation, and heritage conservation are not explicitly related to the trustees' Article I, Section 27 duties to conserve and maintain public natural resources." Concurring and Dissenting Op. at 6 (Dougherty, J.). I express no view on which set of activities would qualify as trust purposes and which would not. Facial challenges are disfavored and at this juncture I fail to see how the Court can address which of the DCNR's activities qualify as trust activities. We lack any factual basis to rule on that issue.

That said, I am highly sensitive to the possibility that the General Assembly has violated its fiduciary duties by creating a funding scheme that forces DCNR to utilize trust assets for non-trust purposes.[2] *PEDF II* "solidif[ied] the jurisprudential sea-change begun

---

[2] Justice Wecht states that "the challenged legislation facially permits the depletion of trust corpus for non-trust purposes." Concurring and Dissenting Op. at 8 (Wecht, J.). The General Assembly may well have violated its fiduciary duties by failing to adequately fund the Oil and Gas Lease Fund with sufficient non-trust assets. If so, that is a function of its budgetary choices and not a function of the provisions as written. Unlike the *PEDF II* statutes, the challenged provisions are constitutionally valid if the General Assembly

by Chief Justice Castille's plurality in *Robinson Township v. Commonwealth*, 83 A.3d 901, 950–51 (Pa. 2013) (plurality)," *PEDF II*, 161 A.3d at 940 (Baer, J., concurring and dissenting), and nothing in today's opinion undermines our precedents. Simultaneously, we must presume good faith on the part of the General Assembly. The General Assembly's reconstitution of the Oil and Gas Lease Fund, and its potential inclusion of funding from non-trust sources must be read at this juncture as facially complying with its constitutional trustee duties.[3] In this regard, the General Assembly and the Treasury, as

---

sufficiently funded the Oil and Gas Lease Fund with non-trust assets. Alternatively, the provisions are valid if the DCNR did not spend trust revenues on non-trust purposes. We are ill-equipped to decide, in the absence of an as-applied challenge with a developed factual record and adversarial briefing, which of the activities funded by the Oil and Gas Lease Fund constitute trust purposes.

[3] After our decision in *PEDF II*, as a matter of law, Article I, Section 27 fiduciary duties are incorporated into all legislative and executive action at all levels of the Commonwealth's governance. It is, in my view, unnecessary to pronounce the existence of mandatory constitutional fiduciary duties in legislation or orders relating to Article I, Section 27 trust assets. Any such pronouncement is surplusage and thus, I do not quibble with the language chosen by the General Assembly in Section 1601.2-E(c) of the Fiscal Code.

Relatedly, Justice Wecht states that the change in the Lease Fund's structure does not warrant a different outcome because "[t]he lack of any accounting obligation or restriction of the use of trust assets solely for trust purposes on the part of the Commonwealth as trustee clearly, plainly, and palpably violates the Constitution." Concurring and Dissenting Op. at 14 (Wecht, J.). Again, I do not see how the absence or presence of this language is relevant. For example, government agencies cannot discriminate on the basis of race, but this would not make every statute dealing with governmental benefits unconstitutional unless the agencies are explicitly told by the General Assembly not to discriminate on the basis of race in making benefit eligibility determinations. Those obligations exist regardless of whether the General Assembly chooses to explicitly codify them. The same is true of the Commonwealth's fiduciary duties. I therefore disagree that the "burden for enforcing the Commonwealth's constitutional fiduciary duties" falls to third parties in the absence of this language. *Id.* at 14 n.39. Inserting language requiring the Commonwealth to maintain an account would not guarantee that the funds will be spent in accordance with the Commonwealth's trust duties. Whether explicitly stated or not, from a citizen's

the depository for Oil and Gas Lease Fund monies, must account for the trust asset portion of the fund and the DCNR must account for the expenditure of those trust assets. This requirement follows from our recognition in *PEDF II* that "[t]rustee obligations are not vested exclusively in any single branch of Pennsylvania's government, and instead all agencies and entities of the Commonwealth government, both statewide and local, have a fiduciary duty to act toward the corpus with prudence, loyalty, and impartiality." *PEDF II*, 161 A.3d at 931 n.23.

The Commonwealth Court has already concluded that because the Commonwealth failed to maintain adequate records by not classifying monies in the Lease Fund and tracking expenditures of trust assets, it neglected its fiduciary duties. *PEDF IV*, 2020 WL 6193643 at *17. It further declared that the Commonwealth is required "to maintain accurate records of the Lease Fund and track trust principal as part of its trustee duties[.]"[4] *Id.* Pursuant to our decision in *PEDF V*, the Commonwealth Court's limitation of the account to principal is obsolete and a detailed account must be maintained for all revenue generated from oil and gas leasing activity.[5]

---

perspective it is simply unknown whether the Commonwealth complied with its fiduciary duties unless and until a challenge to the account is brought.

[4] Justice Wecht argues that the scope of this order is unclear and asks whether the Commonwealth must continue to comply with this directive. The obvious answer is yes. The Commonwealth Court did nothing more than to recognize that those fiduciary duties are imposed on the Commonwealth as trustee of the Article I, Section 27 trust assets. Those fiduciary duties exist by operation of law, and they are imposed even if the Commonwealth Court had not issued the order. *See* nn. 3 and 6.

[5] Because the *PEDF III* opinion was on appeal when the Commonwealth Court issued its decision, the panel "strongly suggest[ed] that the Commonwealth account for and track all monies derived from the oil and gas leases, not just royalties and other trust principal." *PEDF IV*, 2020 WL 6193643 at *17 n.23. Given our precedent, the DCNR must track

In sum, I recognize the concerns voiced by Justices Dougherty and Wecht, but for the reasons stated, this facial challenge cannot succeed.[6]  The Commonwealth's

how it spends those revenues, separating trust proceeds from non-trust proceeds.  This duty, as well as others, is imposed by trust law, as the Commonwealth Court decision recognized.  "As for the accounting, under Pennsylvania trust law, a trustee must maintain 'adequate records of the administration of the trust.'"  *Id.* at *16 (quoting 20 Pa. C.S. § 7780(a)).  In addition, '[a] trustee shall keep trust property separate from the trustee's own property'  20 Pa. C.S. § 7780(b).  Trustees also have reporting duties.  *See generally* 20 Pa.C.S. § 7780.3.

[6] Justice Wecht claims that I "attempt[ ] to save the challenged legislation from a facial challenge by linking the statutes to the Commonwealth Court's order," thereby "implicitly recogniz[ing] that the statutes … violate the constitution."  Concurring and Dissenting Op. at 15 (Wecht, J.).  To be clear, the statutes are not facially unconstitutional, because the challenged statutes allow for the General Assembly to fund the DCNR with non-trust assets.  The Commonwealth Court's order addresses operational fiduciary breaches not facial constitutional infirmities with the statutes.  Moreover, the Commonwealth Court's order belies the notion that the Majority and the Commonwealth Court hold that the DCNR's expenditures of the appropriated funds is immune from challenge.

Furthermore, Justices Dougherty and Wecht appear to view the conclusion that the provisions are not facially unconstitutional as equivalent to a holding that they are definitively constitutional.  But the standard of review for facial challenges accepts that the statute may well include some unconstitutional applications.  In *Clifton v. Allegheny Cnty.*, 969 A.2d 1197 (Pa. 2009), wherein this Court applied the "plainly legitimate sweep" standard, we disagreed with the trial court's conclusion that property assessment laws were facially unconstitutional.  While agreeing the laws were unconstitutional as-applied, we nonetheless determined that the facial challenge failed because the challengers "relie[d] on evidence of the provisions' inequitable application here, and … it appears there are circumstances where the base year provisions could be constitutionally applied[.]"  *Id.* at 1224.  The question is simply whether the unconstitutionality is so apparent that actual proof is unnecessary.  In *PEDF II*, there was no possibility that the statute was constitutional.  Here, actual proof is necessary because the provisions on their face do not violate our constitution.  Moreover, the stricter standard for facial challenges as discussed by the Majority, Maj. Op. at 10, cannot possibly be met given the potential constitutional application premised on the possibility of additional non-trust asset funding so that the DCNR did not spend trust assets on non-trust purposes.  A constitutional application dooms the facial challenge.  *See Schall v. Martin*, 467 U.S. 253, 264 (1984) (a facial challenge fails where "at least some" constitutional applications exist).

preparation of the detailed accounts will allow as-applied challenges to be filed. I therefore join the Majority's Opinion with the understanding that any as-applied challenge will ensure that the Commonwealth is not, in fact, diverting trust assets to non-trust purposes.[7]

Justice Todd joins this concurring opinion.

---

[7] The Commonwealth Court expressed skepticism that the Commonwealth is fully compliant with its duty to adequately fund the Oil and Gas Lease Fund. *See PEDF IV*, 2020 WL 6193643 at \*17 n.22 ("Based upon a rough estimate of the monies deposited into and diverted from the Lease Fund, we are extremely concerned that the Commonwealth may not be administering the trust funds with 'loyalty, impartiality, and prudence.'") (citations omitted).

Relatedly, Justice Wecht asserts that the factual record proves that the statute is facially unconstitutional because "of the funds available in the Lease Fund to pay the $61,291,000 appropriated for DCNR's annual budget in 2017-2018 … ninety-nine percent … was trust corpus." *Id.* at 14. These figures are correctly reported from the Commonwealth Court's opinion but the DCNR's entire budget exceeded $61,291,000. The Office of the Budget lists an appropriation of $106,961,000 to the DCNR. (Available at https://www.budget.pa.gov/Publications%20and%20Reports/CommonwealthBudget/Pages/PastBudgets2015-16To2006-07.aspx). This indicates that an additional $45,670,000 was provided to DCNR. We do not know the source of these funds or how these pools of money were spent. I thus do not share Justice Wecht's confidence that the actual operation of the statute was unconstitutional.